**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL TYRONE TODD, | ) | CASE NO:    1:06-cv-1740 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHAEL J. ASTRUE, | ) | NANCY A. VECCHIARELLI |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

Plaintiff Michael Tyrone Todd ("Todd") challenges the final decision of the

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Todd's claim

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title

II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This

Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned

United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a

Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision

of the Commissioner be AFFIRMED.

## **I.  Procedural History**

On May 20, 2002 and June 20, 2002, Todd filed an application for DIB and SSI alleging

a disability onset date of July 31, 2000, and claiming he was disabled due to sleep apnea, asthma,

bronchitis, Hepatitis B and C, gout, and paranoid schizophrenia.[1]  Todd's application was denied

initially and upon reconsideration.  Todd timely requested an administrative hearing.

On April 12, 2005, Administrative Law Judge Peter Beekman ("ALJ") held a hearing

during which Todd, represented by counsel, testified.  On April 28, 2005, the ALJ found Todd

was able to perform a significant number of jobs in the national economy and, therefore, was not

disabled.

On May 11, 2005, Todd requested review of the ALJ's decision by the Appeals Council.

On July 18, 2005, the Appeals Council vacated the April 28, 2005 decision by the ALJ and

remanded the case for further proceedings.

On November 8, 2005, the same ALJ held a hearing during which Melvin Ross, M.D., a

Medical Expert ("ME"), and Deborah Lee, a Vocational Expert ("VE"), testified.  On February

22, 2006, the ALJ found Todd was able to perform a significant number of jobs in the national

economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied further review.  Todd filed an appeal to this

Court.

On appeal, Todd claims the ALJ erred by: (1) relying on the ME's testimony where the

ME was unable to separate Todd's substance abuse from his other severe impairments; (2)

---

[1]  Todd filed subsequent applications on May 28, 2003 and June 20, 2003, which were
consolidated with the appeal stemming from the aforementioned applications.  (Tr. 75.)

finding Todd had an RFC for medium work when he had found in a prior hearing that Todd only

had an RFC for light work; (3) failing to discuss the weight given to the RFC opinions of the

state agency physician and the ME from the first hearing; and (4) failing to discuss the factors set

forth in SSR 06-3p regarding the "other source" hearing testimony of Todd's mother.

## II.  Evidence

### *Personal and Vocational Evidence*

Born on June 11, 1953 and age fifty-two at the time of his second administrative hearing,

Todd is a person "closely approaching advanced age."  *See* 20 C.F.R. § 404.1563(d) &

416.963(d).  Todd has a one-year college education and past relevant work as a janitor,

automobile sales person, prep cook, paint line worker and material handler.  (Tr. 194-195.)

### *Medical Evidence*

On January 31, 2001, Todd was treated at MetroHealth for acute bronchitis and was

prescribed Bactrium.  (Tr. 468.)  Todd also was advised to quit smoking.  (Tr. 468.)

On February 5, 2002, Todd went to the emergency room due to shortness of breath and

non-productive cough.  (Tr. 359.)  Notes reflect that Todd had a sleep disorder.  (Tr. 359.)  A

chest x-ray revealed plate-like atelectasis in the right base.  (Tr. 359.)  He was prescribed

prednisone and an inhaler.  (Tr. 359.)

On March 6, 2002, Todd complained that he snored and had a swollen uvula for the past

several weeks.  (Tr. 358.)  The examination by W. Clark, M.D., revealed only "minimal"

swelling of the uvula.  (Tr. 358.)  Dr. Clark diagnosed uvular edema and prescribed antibiotics

and prednisone.  (Tr. 358.)

On March 8, 2002, Todd reported several months of visual disturbance and was referred

to an ophthalmologist.  (Tr. 356.)

On April 19, 2002, Todd complained of sleep difficulties, lethargy, and shortness of breath.  (Tr. 346.)  Examination revealed wheezing, an enlarged uvula, and bilateral ankle edema.  (Tr. 346.)  Todd was diagnosed with obstructive sleep apnea and referred to an ear, nose and throat specialist ("ENT").  (Tr. 346.)

On December 30, 2002, a sleep study resulted in a diagnosis of severe obstructive sleep apnea/hypopnea along with significant oxygen desaturation and cardiac arrhythmia (Tr. 349-350, 465-466.)  The study indicated that use of a continuous positive airway pressure (CPAP) mask improved Todd's cardiac irregularities and oxygenation level.  (Tr. 350, 466.)  Todd was prescribed a CPAP machine, antibiotics, and cough medicine.  (Tr. 350-353, 465-466.)

On January 21, 2003, Franklin Krause, M.D., examined Todd at the request of the Bureau of Disability Determination.  (Tr. 367.)   Todd stated that he used a CPAP machine at night and did not snore while using it, but noticed that he takes the CPAP mask off during the night and does not know how long he sleeps without it.  (Tr. 367.)  Dr. Krause diagnosed history of sleep apnea with no immediate benefit from the CPAP mask, long and minimally edematous uvula, and history of drug abuse allegedly quiescent.  (Tr. 368.)

On January 27, 2003, Masroor Mustafa, M.D., saw Todd.  (Tr. 462.)  Todd stated that he used the CPAP machine nightly but it would no longer be on him by morning.  (Tr. 463.)  He indicated that he was sleeping better and was less tired during the day.  (Tr. 463.)

Blood tests revealed Todd was positive for hepatitis A, B, and C.  (Tr. 452-453, 459.)

On February 21, 2003, Gerald W. Klyop, M.D., reviewed Todd's medical records and opined that Todd did not have a severe impairment.  (Tr. 393.)

4

On March 13, 2003, Todd stated that he stopped using the CPAP machine and was constantly tired.  (Tr. 456.)  Examination revealed a deviated septum and boggy nasal mucosa. (Tr. 456-457.)

On March 18, 2003, Todd told a nurse practitioner that he was able to fall asleep using the CPAP machine, but would wake up during the night and remove it so he could resume sleeping.  (Tr. 454.)  Todd complained of occasional heartburn, shortness of breath while at rest, occasional wheezing, nasal congestion, and occasional morning headache.  (Tr. 455.)

In a report received from Rhaed Khairy, M.D., on March 23, 2003, Dr. Khairy stated Todd had a deviated nasal septum.  (Tr. 395.)  Dr. Khairy opined that Todd had unlimited abilities to sit, stand, walk and lift, and was either "not significantly limited" or "moderately limited" in his abilities to bend, reach, handle, push, pull and to use his feet repetitively.  (Tr. 396, 422.)  However, Dr. Khairy's remarks indicate that Todd "can fall asleep during day time due to his obstructive sleep apnea." and that Todd is "unemployable."  (Tr. 396.)

On May 7, 2003, Todd stated that he wore the CPAP mask to bed but would later find the mask on the floor.  (Tr. 445.)  He felt drowsy during the day and suffered from shortness of breath with daily activities, but was able to climb a flight of stairs without interruption.  (Tr. 445.)

On June 15, 2003, Todd went to the emergency room for abdominal pain.  (Tr. 437.)  He said he had consumed alcohol and used cocaine two days earlier.  (Tr. 437.)  Todd had to be awakened during the interview.  (Tr. 437).  Rita Kay Cydulka, M.D., diagnosed abdominal pain and stated that Todd's somnolence was "most likely [due to] recent cocaine use."  (Tr. 439.)

On July 22, 2003, Paul S. Morton, M.D., reviewed Todd's medical records and opined

that Todd could do the following: occasionally lift twenty pounds; frequently lift ten pounds; sit

for six hours in an eight-hour day; stand/walk for six hours in an eight-hour day; frequently

balance, stoop, kneel, crouch and crawl; and occasionally climb ramps and stairs, but never

climb ladders, ropes or scaffolds.  (Tr. 382-383.)  Dr. Morton further opined that Todd needed to

avoid moderate exposure to fumes, dusts, and gases.  (Tr. 384.)  Dr. Morton further

opined that Todd was only partially credible and that Todd put forth "reduced" effort during his

pulmonary function test.  (Tr. 385.)

On March 22, 2004, Todd stated that he used his CPAP while in prison.  (Tr. 418.)

Todd's assessment was possible mild intermittent asthma and chronic rhinitis.  (Tr. 420.)

On May 22, 2004, Todd complained of nasal congestion and stated he used Flonase three

times a week.  (Tr. 413.)  Surgery was unlikely to improve Todd's symptoms.  (Tr. 414.)

On May 31, 2004, Huron Hospital admitted Todd for detoxification.  (Tr. 579.)  Todd

stated that he drank three or four forty-ounce beers a day and smoked cocaine three-to-four times

per day for more than fifteen years.  (Tr. 579.)  Todd tested positive for cocaine use.  (Tr. 595.)

Todd reported suffering from auditory hallucinations.  (Tr. 581, 586.)  Todd was given

medication for alcohol withdrawal, cocaine abuse, and Abilify, which is used to treat

schizophrenia and bipolar disorder.  (Tr. 579.)

On February 23, 2005, there was no change in Todd's use of the CPAP mask.  (Tr. 404,

562.)  The results of a pulmonary function test were "essentially normal." (Tr. 403, 562.)  The

nurse practitioner noted that Todd exhibited "improvement in pulmonary function since the last

examination of 06/09/03."  (Tr. 403, 562.)

On March 31, 2005, Todd saw Olunfunke Fajobi, M.D., for a mental health assessment

prior to starting treatment for hepatitis. (Tr. 479.) Todd said he had a history of polysubstance abuse, "including speed, various pills, and, more recently, cocaine." (Tr. 479-480.) He has auditory hallucinations and displays paranoid thoughts. (Tr. 479, 482.) Dr. Fajobi diagnosed schizophrenia, paranoid type, and ascribed Todd a score of 31-40 on the Global Assessment of Functioning ("GAF") scale. (Tr. 482-483.)

On April 1, 2005, Dr. Khairy completed a Medical Statement Regarding Sleep Disorders. (Tr. 477-478.) Dr. Khairy reported that Todd had sleep apnea and mild-to-moderate daytime somnolence. (Tr. 477-478.) Dr. Khairy stated that he was "unable to assess" whether Todd's daytime somnolence was severe enough to prevent working, but did not explain why he was unable to do so. (Tr. 478.) He did not believe that Todd was a malingerer. (Tr. 478.)

On May 18, 2005, Todd informed Dr. Fajobi that he stopped taking Abilify four days earlier because he felt "spaced out." (Tr. 558.) Todd stated that the Abilify had improved his auditory hallucinations, but admitted to still hearing voices, paranoid ideation, and irritability. (Tr. 558.) Dr. Fajobi prescribed Risperdal (Tr. 559.)

On May 30, 2005, Todd told his mother he was going to "end it all" and took an overdose of eight Risperdal tablets. (Tr. 604.) Todd was hospitalized and a toxicology report indicates Todd tested positive for cocaine. (Tr. 649.)

On June 10, 2005, Todd indicated that he had not used his CPAP regularly since his discharge from the hospital. (Tr. 557.) He also stated that ran out of Advair, and was not regularly logging his peak expiratory flow rate ("PEFR"). (Tr. 557.)

On June 16, 2005, Dr. Fajobi noted that Todd did not fill his prescriptions because he did not want to be on medications. (Tr. 554.) In addition, Todd had relapsed "on alcohol and

cocaine." (Tr. 554, 569.)  Dr. Fajobi recommended chemical dependency treatment.  (Tr. 554.)
Todd "nodd[ed] off continuously" and was uncooperative.  (Tr. 554, 569.)

On October 13, 2005, Todd told Dr. Fajobi that he had been sober since his previous visit
in June and wished to resume his medication again.  (Tr. 573, 666.)  He stated that he heard
voices that advised him to harm himself.  (Tr. 573.)  Todd had paranoid thoughts, auditory
hallucinations, a poverty of ideas, a blunt affect and questionable judgment.  (Tr. 573-574.)
Dr. Fajobi diagnosed schizophrenia and cocaine dependence.  (Tr. 574.)  On the same date, Dr.
Fajobi completed a Mental Functional Capacity Assessment form indicating that Todd was
"extremely" limited in almost all areas of functioning and was "unemployable" (Tr. 657-658.)

On October 28, 2005, Todd stated he was not using drugs, but he tested positive for
cocaine in September.  (Tr. 660-661.)

On November 28, 2005, Brian Putka, M.D. noted that Todd's schizophrenia was well-
controlled with Risperdal and that Todd had only one episode of hearing voices in the past
month.  (Tr. 50.)

On January 19, 2006, Todd underwent debridement of Onychomycotic nails, which had
limited his ambulation.  (Tr. 50.)

On February 2, 2006, Todd reported continuing auditory hallucinations and had
"thoughts of wanting to die."  (Tr. 26.)  Todd had stopped taking all of his medications and
complained of poor sleep despite use of the CPAP machine.  (Tr. 26.)

On May 11, 2006, Todd denied auditory hallucinations but complained of pain in his
right shoulder and right eye, which he rated to be eight of ten.  (Tr. 15.)

8

*Hearing Testimony*

At the November 8, 2005 hearing, Todd testified to the following.  He had heard voices three weeks earlier advising him to stab his mother.  (Tr. 158.)  He had to use a CPAP machine for sleeping that was supposed to be set on twelve, but he had trouble with such a high setting as the air it blew was extremely cold.  (Tr. 158.)  He indicated that he would fall asleep anywhere from five to six times during the day.  (Tr. 160, 165.)  He tried killing himself with drugs.  (Tr. 161.)  Todd further testified that he cannot work because he cannot function or stay awake.  (Tr. 174.)

Todd's mother testified as follows.  Her son lives with him.  (Tr. 175-182.)  To her knowledge he has only attempted suicide once.  *Id*.  Todd falls asleep often during the day.  *Id*.

The ME considered Listings 12.03 and 12.09 but did not believe Todd met or equaled either of the Listings.  (Tr. 187-188.)   The ME opined that Todd's drug and alcohol use was a consistent problem and contributed heavily to his sleep apnea and psychosis.  (Tr. 189, 192-193.)  Although the ME testified that he had general medical knowledge of sleep apnea, he conceded that Todd's somnolence issues were outside the area of his specialty.  (Tr. 187, 189, 193.)  The ME opined that if Todd was compliant with his medication and free of drug and alcohol abuse, his limitations would be moderate under Listing 12.03(B).  (Tr. 186-187.)  The ME stated, however, that Todd's limitations are marked under Listing 12.03(B) with drug and alcohol abuse

and noncompliance with his medication.[2] (Tr. 187-188.)  The ME stated that his response to the question of what Todd's limitations would be without drug and alcohol abuse was "purely theoretical," and further noted that, "I don't have any data to separate it out" as he believed the drug and alcohol abuse was a consistent problem.  (Tr. 190-191.)

The ALJ presented the VE with the following hypothetical: a person aged fifty-two (52), highschool education with one year of college, can work at the medium exertional level with moderate degrees of impairment in activities of daily living, social functioning, concentration, persistence and pace.  (Tr. 196.)  The ALJ clarified that moderate limitation did not preclude simple, repetitive tasks but did preclude jobs that required skill in arbitration, negotiation, or concentration.  (Tr. 196.)  The VE testified that such a person could perform the job of a hand packager at the medium, light and sedentary levels, of which there are 16,000 jobs in Northeast Ohio.  (Tr. 196.)  The VE also identified the job of production worker with 3,400 jobs in Northeast Ohio.  (Tr. 197.)  The ALJ then modified the hypothetical to include an extreme limitation with respect to attention, concentration, and pace.  (Tr. 197.)  The VE responded that no jobs would be available to such a person.  (Tr. 197.)

---

[2]  According to the ME, Todd's functional limitations are as follows (with the limitations arising from substance abuse noted in the parentheses):

| Functional Limitation | Degree of Limitation |
| --- | --- |
| Restriction of activities of daily living | moderate (marked) |
| Difficulties in maintaining social functioning | moderate (marked) |
| Difficulties in maintaining concentration, persistence, or pace | moderate (marked) |
| Episodes of decompensation | none (1 or 2) |

(Tr. 80.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, which can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

Todd was insured on his alleged disability onset date, July 31, 2000, and remained insured through September 30, 2004.  (Tr. 76.)  Therefore, in order to be entitled to DIB, Todd must establish a continuous twelve month period of disability between July 31, 2000 and September 30, 2004.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant is entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Todd established medically determinable, severe impairments, due to

polysubstance abuse, paranoid schizophrenia or drug induced psychosis, sleep apnea, and

COPD, but his impairments, either singularly or in combination, did not meet or equal one listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Todd is unable to perform his past work activities, but

has a Residual Functional Capacity ("RFC") for a limited range of medium work.  The ALJ then

used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to

determine that Todd is not disabled.

### V. Standard of Review

The court's review of the Commissioner's decision is limited to determining whether

there is "substantial evidence" to support the Commissioner's decision and whether the

Commissioner employed proper legal standards in reaching his or her conclusion.  Because the

petitioner's request for review has been rejected, the decision of the ALJ is the final decision of

the Commissioner and is subject to this court's review.  Substantial evidence has been defined as

"[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Kirk v. Sec'y of

Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  If substantial evidence for the

Commissioner's decision exists, the Court's "inquiry must terminate" and the final decision of

the Commissioner must be affirmed.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Furthermore, if the Commissioner's decision is supported by substantial evidence, the

Commissioner's determination must stand regardless of whether the reviewing court would

resolve the disputed issues of fact differently.  *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059

(6th Cir. 1983).

## VI.  Analysis

Todd claims the ALJ erred by: (1) relying on the ME's testimony where the ME was

unable to separate Todd's substance abuse from his other severe impairments; (2) finding Todd

had an RFC for medium work when he had found in a prior hearing that Todd only had an RFC

for light work; (3) failing to discuss the weight given to the RFC opinions of the state agency

physician and the ME from the first hearing; and (4) failing to discuss the factors set forth in

SSR 06-3p regarding the "other source" hearing testimony of Todd's mother.  Each will be

discussed in turn.

### *Substance Abuse*

Todd argues the ALJ erred by relying on the ME's testimony because the ME was unable

to separate Todd's substance abuse from his other severe impairments.  (Pl.'s Br. at 14-17.)  The

Commissioner disagrees and asserts that the ME made an explicit finding that Todd's functional

limitations are only "moderate" without substance abuse and alcohol. (Def.'s Br. at 13-14.)

Pursuant to statute, "[a]n individual shall not be considered to be disabled for purposes of this

title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor

material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §

423(d)(2)(C).

The Social Security Administration follows the following procedure to determine

whether a claimant's drug addiction or alcoholism is a contributing factor material to the

determination of disability.

> (a) General. ***If we find that you are disabled and have medical evidence of your
> drug addiction or alcoholism***, we must determine whether your drug addiction or
> alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (emphasis added).

The Sixth Circuit has not had occasion to address the procedure contained in 20 C.F.R. § 404.1535.  However, several other circuit courts and the Middle District of Tennessee have all found that an ALJ must *first* determine whether a claimant is disabled *before* proceeding with a 20 C.F.R. § 404.1535 analysis and that an ALJ's failure to make a disability finding before discounting the effects of drug and/or alcohol abuse is error.  *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) ("The plain text of the relevant regulation requires the ALJ first to determine whether [claimant] is disabled.  The ALJ must reach this determination initially ... using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. ") (citations omitted); *accord Drapeau v. Massanari*, 10 Fed. Appx. 657, 662 (10th Cir. 2001); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *Williams v. Barnhart*, 338 F. Supp.2d 849, 862-865 (M.D. Tenn. 2004).

14

In his opinion, the ALJ found that Todd was disabled with substance abuse, but was not disabled independent of considerations of substance abuse.  (Tr. 80, 82, 85-86.)  Todd's argument that the ME was unable to "separate out" Todd's substance abuse related limitations lacks merit.  The burden of proving that substance abuse was not a contributing factor material to the disability determination falls on the claimant, but "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow."  *Brueggemann*, 348 F.3d at 693; *see also Frederick v. Barnhart*, 317 F. Supp. 2d 286 (W.D.N.Y. 2004).

Todd argues the ALJ could not have determined whether Todd's substance abuse was a material contributing factor because the ME could not find a point of comparison when Todd was free from drug and alcohol abuse rendering the ME's opinion, by his own admission, purely theoretical.  Todd argues the ALJ was required to find that substance abuse was not a contributing material factor because the ALJ could not reasonably rely on the ME's testimony, as the ME conceded that he did not have any data to "separate out" Todd's impairments without drug and alcohol abuse.  (Pl.'s Br. at 15.)  In his opinion, the ALJ opined that Todd's interpretation of the Commissioner's policy would mandate a finding of disability "in every case where an individual persists in ongoing substance abuse, as long as there is some other co-existing severe mental impairment."  (Tr. 83.)

The record does not reflect that the ALJ was unable to determine whether Todd's substance abuse was a material contributing factor.  Based on the ME's testimony, the ALJ specifically found that Todd did not satisfy Listing 12.03's criteria without substance abuse.  (Tr.

15

80.)  The mere fact that the ME's testimony was hypothetical in nature does not render his testimony incapable of supporting a determination that substance abuse was a material contributing factor.  In *Brueggemann*, the Eighth Circuit noted that "when the claimant is actively abusing alcohol or drugs," determining whether the claimant is disabled without substance abuse "will necessarily be hypothetical."  348 F.3d at 695.

Therefore, the ALJ's finding that Todd was not disabled because substance abuse was a contributing material factor is supported by substantial evidence.

### *Changed RFC Finding*

In his second assignment of error, Todd argues that the ALJ erred by finding Todd had the capacity for work at the medium exertional level.  Todd fails to develop any argument on this issue except for his bare assertion that the ALJ, at the first hearing, found Todd was only capable of working at the light exertional level and, at a subsequent hearing after remand, found that he could perform medium work without making a finding of medical improvement.  Todd has cited no statute, regulation, or case law to support this assertion.  After the first hearing, Todd appealed the ALJ's decision to the Appeals Council.  The Appeals Council vacated the ALJ's decision and remanded the matter fo further proceedings.  (Tr. 514.)  Although the decision of an ALJ is typically binding upon all parties, it is not binding when a party requests review by the Appeals Council or where the Appeals Council revises a decision of the ALJ.  *See* 20 C.F.R. § 404.955.  Because the Appeals Council vacated the ALJ's decision from the first hearing, it appears the ALJ's prior RFC lost any binding effect and Todd has not presented any authority that suggests otherwise.

Therefore, Todd's assignment of error is not well taken.

***Weight of Others' RFC Opinions***

Todd argues that the ALJ's RFC finding is not supported by substantial evidence because "all of the RC opinions [of record] ... found that Todd is limited to the light exertional level at best." (Pl.'s Br. at 18.) In addition, Todd argues that the ALJ did not provide adequate reasons for rejecting the RFC opinion of the State Agency's medical consultant. (Pl.'s Br. at 19.)

As a threshold matter, RFC is an indication of an individual's work related abilities despite his/her limitations. *See* 20 C.F.R. § 416.945(a). The regulations only require examination of "medical opinions." *See* 20 C.F.R. § 404.1527(b). A claimant's RFC is not a medical opinion, but an administrative determination expressly reserved to the Commissioner. *See* 20 C.F.R.§ 416.945(e); *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194, 198 (6th Cir. 2004). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.945(a). Where an issue is ultimately decided by the Commissioner, such as a claimant's RFC finding, the opinion of a physician is given no special significance. *See* 20 C.F.R. §§ 404.1527(e)(2),(3); 416.927(e)(2),(3).

Therefore, the ALJ was not required to set forth any reason as to why he "rejected" the RFC opinion of any medical source.

With respect to his argument that the ALJ's RFC determination is not supported by substantial evidence, Todd's argument merely cites contrary RFC findings from medical sources favorable to a finding of disability. Such evidence is immaterial on review. The inquiry before this Court is whether the record is so bereft of substantial evidence in support of the ALJ's decision that no reasoning mind would come to the conclusion based on that evidence. Todd, however, has failed to make this argument and has not drawn the Court's attention to evidentiary

17

deficiencies in the ALJ's findings.  In fact, Todd's argument is based entirely on his prior

argument that the ALJ failed to follow the RFC finding of certain medical sources – an argument

rejected by the Court.

Therefore, Todd's argument that the ALJ's RFC finding is not supported by substantial

evidence lacks merit.

### Other Source Testimony

Todd avers that the ALJ erred by failing to discuss the factors set forth in SSR 06-03p

regarding "other sources."  Specifically, Todd argues that the ALJ failed to discuss the factors

with respect to the hearing testimony of Todd's mother.  (Pl.'s Br. at 19.)  Todd, however, fails

to develop this argument in any meaningful manner and fails to specify which factors the ALJ

was required to consider.  It is not the Court's function to comb through the factors set forth in

SSR 06-03p and craft an argument in Todd's favor.  *See McPherson v. Kelsey*, 125 F.3d 989,

995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention

a possible argument in the most skeletal way, leaving the court to put flesh on its bones.");

*Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir.

May 11, 2006).  Furthermore, SSR 06-03p does not identify any factors to be applied in the

consideration of opinions from family members, but rather focuses primarily on how the

Commissioner considers medical sources that are not "acceptable sources" and opinions from

individuals who have evaluated a claimant in a professional capacity.

Thus, Todd's assignment of error is deemed waived.

## VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner

supported by substantial evidence.  Accordingly, the decision of the Commissioner should be

AFFIRMED and judgment entered in favor of the defendant.


/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: August 10, 2007


### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**